1   Laurence M. Rosen (SBN 219683)
2   **THE ROSEN LAW FIRM, P.A.**
    355 South Grand Avenue, Suite 2450
3   Los Angeles, CA 90071
4   Telephone: (213) 785-2610
    Facsimile: (213) 226-4684
5   Email: lrosen@rosenlegal.com

6
    *Lead Counsel for Plaintiffs*
7

8   [*Additional Counsel on Signature Page*]

9               UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA

11

12  BRIAN DONLEY, Individually and on       No. 2:23-cv-6343-KK (ASx)
    behalf of all others similarly situated,
13
                                            **MEMORANDUM OF POINTS**
14               Plaintiff,                 **AND AUTHORITIES IN**
                                            **SUPPORT OF LEAD**
15          v.                              **PLAINTIFFS' UNOPPOSED**
                                            **MOTION FOR PRELIMINARY**
16                                          **APPROVAL OF CLASS**
17  LIVE NATION ENTERTAINMENT,              **ACTION SETTLEMENT**
    INC., MICHAEL RAPINO, and JOE
18  BERCHTOLD,                              <u>CLASS ACTION</u>
19               Defendants.
                                            Date: April 24, 2025
20                                          Time: 9:30 a.m.
21                                          Courtroom: 3
                                            Judge: Hon. Kenly Kiya Kato
22

23

24

25

26

27

28

---

# <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ...................................................................1

II.    OVERVIEW OF THE LITIGATION ..........................................................2

    A.    Plaintiffs' Allegations ...................................................................2

    B.    Procedural History and Settlement ..............................................4

III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS...................................................................................................5

    A.    The Settlement Class Satisfies Rules 23(a) .................................5

        1.    Numerosity ........................................................................5

        2.    Commonality .....................................................................6

        3.    Typicality ...........................................................................6

        4.    Adequacy ...........................................................................7

    B.    The Settlement Class Satisfies Rule 23(b)(3).............................8

        1.    Predominance ...................................................................8

        2.    Superiority .........................................................................9

    C.    Ascertainability ...........................................................................10

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL................................................................................................10

    A.    Plaintiffs and Lead Counsel Adequately Represented the Class ....................................................................................11

    B.    The Settlement is the Product of Arm's Length Negotiations ...............................................................................12

    C.    The Relief Provided to the Settlement Class is Adequate .....................................................................................13

i

1           1.    The Strength of Plaintiffs' Case and the Risk,
Expense, Complexity, and Likely Duration of
2           Continued Litigation ................................................................13

3           2.    Risk of Maintaining Class Action Status Through
4           Trial ...........................................................................................15

5        D.    The Remaining Rule 23(e)(2)(C) Factors Support Approval ............16

6           1.    The Methods of Distributing Relief and Processing
7           Claims ......................................................................................16

8           2.    Proposed Attorneys' Fees ........................................................16
9
       3.    Other Agreements ....................................................................17
10

11        E.    The Proposed Settlement Does Not Unjustly Favor Any
Settlement Class Member, Including Plaintiffs ...............................17
12

13        F.    The Remaining Ninth Circuit Factors Favor Approval ....................18

14           1.    The Amount Offered in Settlement .........................................18

15           2.    The Extent of Discovery and Stage of Proceedings ...............19

16           3.    Experienced Counsel's Recommendations ..............................20

17    V.    THE COURT SHOULD APPROVE THE NOTICE PLAN .......................21
18
VI.    PROPOSED SCHEDULE OF EVENTS ....................................................23
19
VII.    CONCLUSION ...........................................................................................24
20

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................8, 9

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................................................22

*Booth v. Strategic Realty Tr., Inc.*,
    2015 WL 3957746 (N.D. Cal. June 28, 2015) .....................................................10

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................11, 12, 18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..............................................14, 18

*In re "Agent Orange" Prod.* Liab. Litig.,
    597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................22

*In re China Med. Corp. Sec. Litig.*,
    2013 WL 12126754 (C.D. Cal. May 16, 2013) .................................................5, 8

*In re Cooper Companies Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................................9

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................16

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ..............................................17, 19

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................................10

iii

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019)....................................................................10

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................14

*In re Juniper Networks, Inc. Sec. Litig.*,
    264 F.R.D. 584 (N.D. Cal. 2009)................................................................6

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)............................................................14, 18

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................16

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995).......................................................................17

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ...........................................19

*In re Silver Wheaton Corp. Sec. Litig.*,
    2017 WL 2039171 (C.D. Cal. May 11, 2017) .....................................5, 6, 7

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. April 23, 2024) .....................................8, 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)..........................................................14

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ..............................................................14

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .........................................6, 9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.* Litig.,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ..........................................20

iv

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................. 7

*Lusk v. Five Guys Enterprises LLC*,
  2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) ..................................................... 13

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
  2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ................................................. 6, 7

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ..................................................... 12

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ......................................................................... 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................................ 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ......................................................................... 8

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ....................................................................... 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)................................................................... 10, 15, 19

*Roberti v. OSI Sys., Inc.*,
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ..................................................... 13

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)............................................................................... 22

*Salazar v. Midwest Servicing Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018) ..................................................... 15

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................... 12

v

*Turocy v. El Pollo Loco Holdings, Inc.*,
2018 WL 3343493 (C.D. Cal. July 3, 2018) ............................................. 5

*Vikram v. First Student Mgmt., LLC*,
2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ........................................... 18

*Vinh Nguyen v. Radient Pharms. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ............................................................ 5

*Wong v. Arlo Techs., Inc.*,
2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ......................................... 13

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......................................... 18

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) .................................................................. 23

28 U.S.C. §1715 ......................................................................................... 22

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................... 5

Fed. R. Civ. P. 23(a)(2) ............................................................................... 6

Fed. R. Civ. P. 23(b)(3) ...................................................................... 5, 8, 10

Fed. R. Civ. P. 23(c)(2) ............................................................................. 22

Fed. R. Civ. P. 23(e) .................................................................................. 21

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................ 11

Fed. R. Civ. P. 23(e)(2); and (ii) ......................................................... 11, 18

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................ 12

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................ 12

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................ 16

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................... 13

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

1

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ................................................................. 16

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................. 17

Fed. R. Civ. P. 23(e)(3); and (D) .................................................................... 11

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................... 7

Fed. R. Civ. P. 23(h)(1) .................................................................................. 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

Lead Plaintiffs Brian Donley and Gene Gress (collectively, "Plaintiffs") respectfully submit this memorandum in support of their unopposed Motion for Preliminary Approval of Class Action Settlement.[1] Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class and appoint class representatives and class counsel; (2) preliminarily approve the Settlement on the terms set forth in the Stipulation; (3) approve the proposed form and method of notice to the Settlement Class, and direct that such notice be disseminated; and (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters.

## I.    PRELIMINARY STATEMENT

The Parties agreed to resolve this Action for $20,000,000 ("Settlement"). Plaintiffs and their counsel believe that the Settlement provides a fair, reasonable, and adequate result for investors given the significant risks of continued litigation. Plaintiffs now seek preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Settlement Class, soliciting claims, objections to, and exclusions from, the Settlement. At the Settlement Hearing, with the Settlement Class Members' reactions in hand, the Court will determine whether to grant final approval of the Settlement.

To reach the Settlement, the Parties engaged in arm's-length negotiations guided by an experienced mediator. Plaintiffs and their counsel were aware that

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated March 21, 2025 ("Stipulation"), which is attached as Exhibit 1 to the concurrently filed Declaration of Joshua Baker in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Baker Decl.").

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

they faced significant obstacles if litigation were to continue, including class certification, difficulties in proving loss causation and damages, overcoming Defendants' potential defenses, and the risks of prosecuting this litigation for years through trial and appeals. The Settlement provides a recovery for investors that avoids these risks and delay from further litigation.

The Court must also preliminarily certify the Settlement Class to allow for notice to be distributed to Settlement Class Members. Certification of a settlement class is routine in securities class actions, and this case is no outlier.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiffs will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together, the "Notice").[2] Here, the Notice closely tracks the forms routinely used to communicate notice in securities class actions, the Notice Plan is the same as those routinely approved in securities class actions, and satisfy the requirements of Rule 23, Due Process, and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## II.    OVERVIEW OF THE LITIGATION

### A.    Plaintiffs' Allegations

Live Nation Entertainment, Inc. ("Live Nation") is the largest live entertainment company in the world, most notably owning and operating hundreds of concert venues globally, promoting thousands of events worldwide, and operating the largest ticketing company in the United States through its Ticketmaster subsidiary. Plaintiffs allege that Live Nation, its CEO, Michael Rapino, and its CFO, Joe Berchtold (collectively, "Defendants"), made several false

---

[2] The Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim and Release Form ("Proof of Claim").

and misleading statements during the Settlement Class Period concerning Live Nation's anticompetitive practices and the level of competition (or lack thereof) that Live Nation faced. Specifically, Plaintiffs allege that Defendants misleadingly failed to disclose that: (1) Live Nation engaged in anticompetitive conduct, which was the true source of its business growth, including improperly tying its underpriced concert promotion services to its Ticketmaster services, retaliating against venues that spurned Ticketmaster, and restricting consumers' ability to resell tickets using competing secondary ticketing services; (2) Live Nation did not face significant competition; (3) Live Nation was not cooperating with investigations by the U.S. Department of Justice ("DOJ") and a Senate subcommittee; and (4) as a result, Live Nation was likely to incur regulatory scrutiny and face fines, penalties, and reputational harm.

Plaintiffs allege that the truth was gradually revealed by several events: (1) in November 2022, when *The New York Times* reported that the DOJ had opened an antitrust investigation into Live Nation, causing Live Nation's stock price to fall $5.64, or 7.8%; (2) in February 2023, when *NPR* reported that a Senate subcommittee wrote to the DOJ presenting evidence of Live Nation's monopoly power and anticompetitive acts and "encourag[ing]" the DOJ to take action, causing the stock price to fall $7.71, or 10.1%; (3) in July 2023, when *Politico* reported that the DOJ could soon file an antitrust lawsuit against Live Nation, causing the stock price to fall $7.60, or 7.8%; and (4) in November 2023, when *CNBC* reported that a Senate subcommittee had subpoenaed Live Nation after being "stonewalled," causing the stock price to fall $2.78, or 3%. Finally, in May 2024, the DOJ filed a complaint against Live Nation alleging several violations of antitrust laws, including allegations of anticompetitive conduct closely tracking Plaintiffs' allegations, causing the stock price to fall $7.92, or 7.8%.

3

**B.    Procedural History and Settlement**

Lead Plaintiff Donley initiated this Action on August 4, 2023, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. On October 18, 2023, the Court appointed Donley and Gress as Lead Plaintiffs and The Rosen Law Firm, P.A. ("Rosen Law") and Glancy Prongay & Murray LLP ("GPM") as Lead Counsel.

On November 30, 2023, Plaintiffs filed the operative Amended Class Action Complaint ("Complaint"). On December 22, 2023, Defendants filed a motion to dismiss the Complaint, which was fully briefed by January 25, 2024. The Court denied Defendants' motion to dismiss on February 23, 2024. Defendants filed their answer to the Complaint on March 27, 2024.

In discovery, Plaintiffs served twelve subpoenas for documents on key non-parties, including Live Nation's top competitor, its lobbying firms, and entities named in the DOJ's complaint. Defendants produced over 140,000 pages of documents, and the subpoenaed non-parties produced over 50,000 additional pages of documents, all of which Lead Counsel reviewed.

On November 13, 2024, the Parties participated in a mediation with former United States District Judge Layn R. Phillips. Judge Phillips has considerable experience mediating securities class actions and is a nationally acclaimed mediator. Prior to the mediation, the Parties exchanged detailed mediation statements. The Parties were unable to reach an agreement during the mediation, but continued discussions with Judge Phillips guidance. After continued negotiations, the Parties accepted Judge Phillips' proposal to settle the Action for $20,000,000. After weeks of negotiations, the Parties executed a Term Sheet and thereafter negotiated and executed the Stipulation.

III.    **THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that the Court preliminarily certify a Settlement Class consisting of "all persons and entities that purchased the publicly traded common stock of Live Nation between February 23, 2022 and November 20, 2023, both dates inclusive." Stipulation ¶1(uu) (defining "Settlement Class" and detailing various exclusions therefrom).  Courts in the Ninth Circuit and within this District routinely certify securities class actions such as this one. *Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493 (C.D. Cal. July 3, 2018); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171 (C.D. Cal. May 11, 2017).

**A.    The Settlement Class Satisfies Rules 23(a)**

To certify a settlement class, the Court must determine that the threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

**1.    Numerosity**

For numerosity purposes, "classes of forty or more are considered sufficiently numerous." *In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013).[3] In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises purchasers of Live Nation common stock, which traded on the NYSE during the Settlement Class Period. There are likely thousands of Settlement Class members. Thus, the Settlement Class satisfies numerosity.

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

### 2. Commonality

The existence of even one significant common issue of law or fact may suffice to show commonality. *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *3 (C.D. Cal. Aug. 27, 2010). This case involves several common questions of law and fact, including whether: (1) Defendants made materially false or misleading public statements during the Settlement Class Period; (2) Defendants acted with scienter; (3) Defendants' false and misleading statements artificially inflated the market price of Live Nation common stock during the Settlement Class Period; and (4) Settlement Class Members were damaged by Defendants' false and misleading statements. Commonality is satisfied even though the amount to which each class member is entitled will differ. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)"). Thus, the Settlement Class satisfies commonality.

### 3. Typicality

"[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Silver Wheaton*, 2017 WL 2039171 at *7. Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Here, Plaintiffs purchased Live Nation common stock during the Settlement Class Period and allege that they suffered significant losses as a result thereof. *See* ECF No. 1 at 30-31; ECF No. 20-2. There is no indication that Plaintiffs' claims are atypical of those of the Settlement Class, or that unique defenses apply to Plaintiffs' claims. *See Semtech*, 2010 WL 11507255 at *4-5. Thus, Plaintiffs satisfy the typicality requirement.

### 4.    Adequacy

A representative plaintiff is adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Semtech*, 2010 WL 11507255 at *5. Plaintiffs signed certifications pursuant to the PSLRA and have zealously prosecuted the Action on behalf of the putative class. ECF No. 1 at 30-31; ECF No. 20-2. There are no conflicts of interest between Plaintiffs and the Settlement Class, thus Plaintiffs are adequate class representatives. *Silver Wheaton*, 2017 WL 2039171 at *7-8.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel have been involved in this Action from the beginning, conducting a pre-filing investigation, filing the initial complaint, retaining an investigator to interview former Live Nation employees, filing an amended complaint, retaining a damages expert to evaluate the case, successfully opposing Defendant's motion to dismiss, negotiating document discovery and reviewing nearly 200,000 pages of documents from Live Nation and key third parties, preparing a mediation statement, participating in a mediation, negotiating and formalizing the Settlement, and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases. Courts have consistently found Rosen Law and GPM to be well-suited as class counsel in securities class actions. *E.g., Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Stable Road Acquisition Corp.*, 2024 WL 3643393,

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

at *13 (C.D. Cal. April 23, 2024) ("GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions."). Lead Counsel have, and will continue to, adequately represent the Settlement Class.

### B.    The Settlement Class Satisfies Rule 23(b)(3)

The Court should preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members" ("predominance"), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and 625 (1997). Indeed, allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *China Med.*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class.").

Here, issues surrounding Defendants' alleged misconduct, such as whether: their statements were materially false and/or misleading; they acted with scienter; and their statements caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class and predominate over all other issues. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (predominance requirement met where "many purchasers have been defrauded over time by similar misrepresentations."). Moreover, while the amount of damages may differ among Settlement Class Members, Plaintiffs contend that

8

liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus, the Settlement Class satisfies predominance.

### 2. Superiority

For a proposed settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors also support certification. As the Supreme Court recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action. A class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."). By efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

### C.    Ascertainability

The Ninth Circuit recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, the proposed Settlement Class is clearly defined as investors who purchased publicly traded Live Nation common stock during the Settlement Class Period. *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). The Settlement Class definition is, therefore, suitable for certification and satisfies ascertainability.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("the Ninth Circuit has a strong judicial policy that favors [approving] settlements, particularly where complex class action litigation is concerned") (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.")).

Judicial approval is required to settle claims brought as a class action. The issue at preliminary approval turns on whether the Court "will likely be able to: (i)

approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, courts in the Ninth Circuit consider the following "*Hanlon* factors" in conducting a preliminary approval analysis, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The proposed Settlement satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable *Hanlon* factors. It is, therefore, likely that the Court will be able to approve the Settlement as fair, reasonable and adequate.

### A.    Plaintiffs and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

1   Circuit requires courts to resolve two questions to determine adequacy: "(1) do the

2   named plaintiffs and their counsel have any conflicts of interest with other class

3   members[;] and (2) will the named plaintiffs and their counsel prosecute the action

4   vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

5        As set forth above, Plaintiffs and Lead Counsel have adequately represented

6   the Settlement Class throughout this litigation. Plaintiffs have no antagonistic

7   interests to other class members, their claims are typical of Settlement Class

8   Members' claims, and Plaintiffs share an interest with the other Settlement Class

9   Members in obtaining the largest possible recovery for the Settlement Class. *Mild*

10  *v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because

11  Plaintiff's claims are typical of and coextensive with the claims of the Settlement

12  Class, his interest in obtaining the largest possible recovery is aligned with the

13  interests of the rest of the Settlement Class members.").

14       Moreover, Plaintiffs retained highly experienced counsel with a successful

15  track record of representing investors in similar securities cases. *Supra*, § III(A)(4).

16  Plaintiffs and Lead Counsel have also demonstrated their adequacy by, at all times,

17  vigorously prosecuting the Action.

18  **B.    The Settlement is the Product of Arm's Length Negotiations**

19       Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was

20  negotiated at arm's length." The use of an experienced mediator further supports

21  satisfaction of this factor. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4

22  (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the

23  settlement process confirms that the settlement is non-collusive.").

24       The proposed Settlement followed hard-fought litigation and arm's length

25  negotiations including a mediation session and subsequent discussions guided by

26  Judge Phillips, a nationally renowned mediator with extensive experience

27  mediating securities class actions. The Parties' mediation statements presented,

28

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

among other things, their respective views on the merits of the Action and issues
relating to causation and damages. After a full day in-person mediation session, and
weeks of continued negotiations facilitated by Judge Phillips, the Parties reached
an agreement in principle after mutually accepting a mediator's proposal. *Roberti
v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (that the parties
accepted a mediator's proposal from Judge Phillips after participating in a full-day
mediation and continuing negotiations over the ensuing weeks confirmed that the
settlement was non-collusive). "The fact … that the Settlement is based on a
mediator's proposal further supports a finding that the settlement agreement is not
the product of collusion." *Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923,
at *9 (E.D. Cal. Sept. 30, 2022).

### C.    The Relief Provided to the Settlement Class is Adequate

The Court must also consider whether "the relief provided for the class is
adequate, taking into account … the costs, risks, and delay of trial and appeal" along
with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement
incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case;
the risk, expense, complexity, and likely duration of further litigation; and the risk
of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, 2021
WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021). These factors support preliminary
approval of the Settlement.

### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the Settlement is fair, reasonable, and adequate, the
Court must balance the continuing risks of litigation, including the strengths and
weaknesses of the case, and the complexity, expense, and likely duration of
continued litigation, against the benefits afforded to the Settlement Class, including

the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

Here, the risks of continued litigation are considerable. "Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Defendants deny any wrongdoing and would present a multi-pronged defense. Plaintiffs and Lead Counsel believe that the case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through the completion of fact and expert discovery, class certification, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Continuing to litigate this Action would likely require extensive additional third party document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a favorable, immediate and guaranteed recovery and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624.

Thus, the Settlement resulted from balancing the risks, costs, and delay inherent in complex cases. The benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $20,000,000 Settlement is a reasonable and adequate recovery. *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).

### 2.    Risk of Maintaining Class Action Status Through Trial

The Settlement was reached before Plaintiffs moved for class certification. While Plaintiffs believe that class certification would be appropriate (*see* §III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action ... this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D.

Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### D.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

#### 1.    The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiffs request that the Court appoint A.B. Data, Ltd. ("A.B. Data") as Claims Administrator. If A.B. Data is appointed it will, under Lead Counsel's guidance, provide notice of the Settlement, process Claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation ("Plan") set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

#### 2.    Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees of up to 33⅓% of the Settlement Fund. Lead Counsel will make a separate application for attorneys' fees and expenses, to be heard by the Court during the Settlement Hearing. For the purposes of preliminary approval, even the maximum amount of fees that Plaintiffs will seek is reasonable. An award of attorneys' fees of up to 33⅓% of the Settlement Fund is reasonable and consistent with the fees awarded in similar actions in this Circuit. *E.g., In re Heritage Bond Litig.*, 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding one-third of a $27.78 million settlement);

1  *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys'
2  fee award of 33% of a $14.8 million settlement); *In re Pac. Enterprises Sec. Litig.*,
3  47 F.3d 373, 379 (9th Cir. 1995) (approving a fee award of one-third of a $12
4  million settlement). Lead Counsel have received no compensation for their work on
5  this Action to date, and will not until the Court issues an order awarding attorneys'
6  fees following the Settlement Hearing.

7          **3.      Other Agreements**
8          The Parties also executed a standard supplemental agreement providing that
9  if Settlement Class Members opt out such that the number of shares held by those
10 persons reaches a certain threshold, Live Nation may terminate the Settlement.
11 Stipulation ¶37. The terms of the supplemental agreement are kept confidential to
12 avoid incentivizing Settlement Class Members to opt out solely to leverage the
13 threshold to exact an individual settlement. "This type of agreement is standard in
14 securities class action settlements and has no negative impact on the fairness of the
15 Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y.
16 Oct. 16, 2019).

17     **E.      The Proposed Settlement Does Not Unjustly Favor Any
18              Settlement Class Member, Including Plaintiffs**
19          Courts must also evaluate whether the settlement treats class members
20 equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does
21 not offer preferential treatment to any Settlement Class Member, including
22 Plaintiffs. The Plan is set forth in the Long Notice and provides for a *pro rata*
23 distribution of the Net Settlement Fund to Authorized Claimants who suffered
24 losses as a proximate result of the alleged fraud. The Plan was developed by Lead
25 Counsel in conjunction with Plaintiffs' damages expert and treats all Settlement
26 Class Members equitably based upon the relative losses they sustained. *See Yang v.*
27 *Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014)
28

17

("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

Plaintiffs will also seek reimbursement of costs incurred representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement). Such awards do "not constitute inequitable treatment of Settlement Class Members." *Stable Road*, 2024 WL 3643393, at *8.

**F.    The Remaining Ninth Circuit Factors Favor Approval**

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors support preliminary approval.[4]

**1.    The Amount Offered in Settlement**

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *8. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) ("This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case"). Evaluation of a settlement must recognize that parties must make compromises to reach an agreement. *Officers for Justice*, 688 F.2d at 624.

---

[4] Before notice of the Settlement is disseminated, it is not possible to gauge the reaction of the class. Plaintiffs, however, support the Settlement.

18

The $20 million Settlement Amount is reasonable and warrants preliminary approval. The Settlement recovers approximately 3% of the maximum estimated damages of $743 million under Plaintiffs' ***best-case scenario***, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs are able to succeed at summary judgment and at trial; (ii) the Court certifies the case, including the same class period as the Settlement Class Period; and (iii) the Court and jury completely accept Plaintiffs' damages theory, including proof of loss causation for each of the five declines in stock price. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

The percentage of maximum damages recovered here falls within the range of other securities class action settlements that courts have approved. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594389, at *8-9 (average recovery between 2% to 3% of maximum damages); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). It is also substantially higher than the median recovery of 1.7% in similarly sized securities cases. *See* Baker Decl., Ex. 2 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025)), at p.26 (Fig. 23) (between 2015 and 2024, the median recovery for settlements of securities class actions with estimated damages between $600-$999 million was 1.7% of investor losses).

## 2.    The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL

19

6248426, at *13-14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Live Nation's SEC filings, press releases, conference calls, and other public statements during the putative class period; (ii) reviewing public documents, reports, announcements, and news articles concerning Live Nation, including research reports by securities and financial analysts and the DOJ's complaint; and (iii) retaining an investigator to interview former Live Nation employees and knowledgeable third parties. Lead Counsel also fully briefed and prevailed against Defendants' motion to dismiss, and reviewed nearly 200,000 pages of documents produced in discovery by Defendants and key third parties.

Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to recommending to Plaintiffs whether to accept the Settlement Amount to resolve the Action. Reviewing Defendant's mediation statement and negotiating the Settlement during and after the mediation further informed Lead Counsel about the strengths and weaknesses of the case. As a result, Plaintiffs and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement.

### 3.    Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). As set forth above, Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the merits and risks

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

of the Action. Lead Counsel's support for the reasonableness of this Settlement supports preliminary approval.

Defendants were also represented by experienced and skilled securities practitioners. The attorneys at Latham & Watkins LLP vigorously represented their clients and were equally well-informed regarding the case. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

## V.    THE COURT SHOULD APPROVE THE NOTICE PLAN

**The Notice Plan is Adequate:** Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (1) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (2) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by A.B. Data; (3) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (5) publishing the Summary Notice over *PR Newswire* and in *Investor's Business Daily.*

This proposed notice plan is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

19, 2020) (approving similar notice program). Defendants will also provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*.; Stipulation ¶60.

**The Notice is Adequate:** As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, Plan, and/or the proposed attorneys' fees and Litigation Expenses. The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *23– 24 (S.D.N.Y. Dec. 23, 2009).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. The proposed Long Notice provides, in plain wording: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature, history, and status of the litigation; (c) the proposed Settlement Amount; (d) a description of the proposed Plan; (e) the maximum attorneys' fees and expenses and awards to Plaintiffs to be sought by Lead Counsel; (f) the definition of the Settlement Class; (f) the reasons the Parties have proposed the Settlement; (h) the estimated distribution per damaged share; (i) a description of the Settlement Class's claims; (j) the Parties' disagreement over damages and liability; (k) contact information for all counsel and the Court; and (l) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to 33⅓% of the Settlement Amount, reimbursement of Litigation Expenses of up to $185,000, and awards to Plaintiffs of up to $5,000 each, or $10,000 in total, all to be paid from the Settlement Fund. Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following procedural schedule, which tracks those used in similar securities class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiffs request the Court use the same or greater intervals between each event listed to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | At least 120 days from entry of the Preliminary Approval Order (Preliminary Approval Order ¶6) |
| Mailing the Postcard Notice. | Within 20 Business Days after entry of Preliminary Approval Order (¶8(b) (the "Notice Date") |
| Posting the Stipulation, Preliminary Approval Order, Long Notice, and Proof of Claim on the Settlement website. | Within 20 Business Days after entry of Preliminary Approval Order (¶8(c)) |
| Publication of the Summary Notice. | Within 10 Business days after the Notice Date (¶8(d)) |

| Plaintiffs to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 35 days prior to Settlement Hearing (¶27) |
|---|---|
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (¶¶14, 17) |
| Deadline for Proof of Claims. | No later than 120 days after the Notice Date (¶11) |
| Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 7 days prior to Settlement Hearing (¶27) |

## VII.  CONCLUSION

For the foregoing reasons, the Court grant Plaintiffs' unopposed motion and enter the proposed Preliminary Approval Order.

Respectfully submitted,

Dated: March 21, 2025

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Ex Kano S. Sams II
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: gspencer@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Brian Donley*

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

## **CERTIFICATE OF COMPLIANCE WITH LR 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Date: March 21, 2025

                    <i>/s/Joshua Baker</i>

Joshua Baker

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)