Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DONLEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., MICHAEL RAPINO, and JOE BERCHTOLD,<br><br>Defendants. | No. 2:23-cv-6343-KK (ASx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND CERTIFICATION OF SETTLEMENT CLASS**<br><br><u>CLASS ACTION</u><br><br>Date: August 28, 2025<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Kenly Kiya Kato |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION...........2

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ........2

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..........3

        A.      The Strength of Plaintiffs' Case, Including the Risk, Expense,
                Complexity, and Likely Duration of Further Litigation, Supports
                Final Approval ...................................................................................4

                1.      Plaintiffs Faced the Risks of Obtaining and Maintaining
                        Class Action Status Through Trial ..................................................5

                2.      Plaintiffs Faced Significant Risks to Proving Liability
                        and Other Risks of Continued Litigation........................................6

        B.      The Amount Obtained in Settlement Supports Final Approval...............8

        C.      The Extent of Discovery Completed and the Stage of the
                Proceedings Support Final Approval .................................................10

        D.      The Proposed Settlement Resulted from Good Faith
                Arm's-Length Negotiations by Informed, Experienced Counsel ...........11

        E.      The Presence of a Governmental Participant Does Not Weigh
                Against Approval ................................................................................13

        F.      The Favorable Reaction of the Settlement Class Supports
                Approval..............................................................................................14

        G.      The Settlement Meets the Remaining Rule 23(e)(2) Factors .................15

                1.      The Proposed Method for Distributing Relief Is Effective ..........15

                2.      The Proposed Award of Attorneys' Fees is Appropriate .............16

                3.      The Parties Have No Other Agreements Besides Opt-Outs.........16

      4.     There is No Preferential Treatment; the Proposed Plan of Allocation Treats Settlement Class Members Equitably ..............17

V.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...........17

VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ....18

VII.   CONCLUSION .......................................................................................20

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

# TABLE OF AUTHORITIES

**Cases**

*Abadilla v. Precigen, Inc.*,
    2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................ 14

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) .......................................................................................... 6

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................................................... 19

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................................... 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................... 14

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ..................................................................................................... 3

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................... 4, 8, 15

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ....................................................... 16

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................................ 4

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 19

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................... 7

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................................................ 7

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...............................................................18

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................................................18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................9

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................5, 7, 9, 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................3, 8, 10, 11

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010) .........................................................................7

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................3, 5, 14, 17

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) .....................................................................................7

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .....................................................................................12

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ........................................................................................8

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014) .........................................................................7

*In re Rambus Inc. Derivative Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............................................................14

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................9

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. April 23, 2024)...................................................passim

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................................5

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..................................................................................3

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................17

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ........................................................10

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ................................................................................16

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................12

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................................4

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ....................................................................4

*Lusk v. Five Guys Enterprises LLC*,
    2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) .......................................................12

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ..........................................................15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................7, 12, 13

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................4, 8

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................................7

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .............................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................... 11, 19

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) ............................................................. 4

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ......................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................... 3, 4

*Wells Fargo Collateral Prot. Ins. Litig.*,
   2019 WL 6219875 (C.D. Cal. Nov. 4, 2019) ........................................................... 14

**Statutes**

15 U.S.C. § 78u-4(a)(4) .............................................................................................. 16

15 U.S.C. § 78u-4(a)(7) .............................................................................................. 19

28 U.S.C. §1715 ........................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 16, 17, 19

Fed. R. Civ. P. 23(c)(1) ................................................................................................ 5

Fed. R. Civ. P. 23(e) ............................................................................................... 3, 4

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................ 19

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 3, 4

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(3); and (D) ..................................................................................3

**Other Authorities**

Advisory Committee's Notes to 2018 Amendment,
   324 F.R.D. 904.......................................................................................................3

Manual for Complex Litigation (Third) § 30.44 (1995)............................................13

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

Lead Plaintiffs Brian Donley and Gene Gress ("Plaintiffs") submit this memorandum in support of their Motion for Final Approval of the Settlement and Plan of Allocation, and Certification of the Settlement Class.[1]

## I.    INTRODUCTION

Plaintiffs and Defendants Live Nation Entertainment, Inc. ("Live Nation" or the "Company"), Michael Rapino, and Joe Berchtold ("Defendants," and together with Plaintiffs, the "Parties") have reached a $20,000,000 all cash, non-reversionary settlement of this securities class action ("Settlement"). As described below and in the Joint Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous litigation risks, including difficulty in proving complex claims mirroring antitrust violations, obtaining class certification, and difficulty in proving loss causation and damages.  In fact, the Settlement represents between 2.7% and 6.2% of the Settlement Class's class-wide aggregate damages, which is an extremely favorable result when compared to the median recovery in securities class action settlements with similar aggregate damages. Moreover, the Settlement was reached only after extensive, arm's-length negotiations conducted by experienced counsel with the assistance of former District Court Judge Layn R. Phillips ("Judge Phillips"), and it is the result of a mediator's recommendation that followed an all-day mediation session and follow-up negotiations.  The Settlement is, therefore, both substantively and procedurally fair, and final approval is appropriate.

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning set forth in the Stipulation and Agreement of Settlement dated March 21, 2025 ("Stipulation") (ECF No. 89-1). Internal citations and quotations are omitted unless otherwise noted. Citations to "Joint Decl." are to the Joint Declaration of Joshua Baker and Ex Kano S. Sams II, filed herewith. Citations to "¶__" or "Ex. __" are to the paragraphs and exhibits of the Joint Decl. Citations to "Walter Decl." are to the Declaration of Adam D. Walter, attached as Exhibit 1 to the Joint Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of the Motion for an Award of Attorneys' Fees and Litigation Expenses filed herewith.

1

Plaintiffs also seek approval of the proposed Plan of Allocation ("Plan"). Lead Counsel developed the proposed Plan in consultation with a consulting damages expert. The proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan because it, too, is fair and reasonable.

Finally, Plaintiffs seek final certification of the Settlement Class for settlement purposes. The Court preliminarily certified the Settlement Class in its Preliminary Approval Order, and no pertinent changes have transpired that would upset or alter the Court's preliminary findings and determinations. Thus, the Court should certify the Settlement Class for settlement purposes.

## II. FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Joint Declaration for a discussion of, *inter alia*: the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support final approval of the Settlement and the Plan.

## III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. ECF No. 92 at 2. As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, ECF No. 88-1 at 5-10, certification of the Settlement Class under Rule 23 is merited here.

The Court thoroughly analyzed each element of Rule 23(a) and (b)(3) in the Preliminary Approval Order. ECF No. 92 at 2-4. No pertinent changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes. *See In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. April 23, 2024).

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23 requires judicial approval of class action settlements, and provides that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) . It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendment, 324 F.R.D. 904, 918. Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit traditionally

consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

**A.     The Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval**

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1375–76; *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Securities actions are notoriously complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Lead Counsel and Plaintiffs carefully evaluated the merits of this case in light of the attendant risks before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risks posed to the Settlement Class in continuing to litigate this action. *See*

*In re Heritage Bond Litig.*, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

> **1.    Plaintiffs Faced the Risks of Obtaining and Maintaining Class Action Status Through Trial**

Plaintiffs had not yet undertaken the complex and expensive task of obtaining certification of the putative class. One of the more difficult elements of class certification to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations, predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiffs would need to prove that Live Nation's common stock traded in an efficient market throughout the entire Class Period.

To satisfy the *Basic* presumption, Plaintiffs would need to hire an expert economist to conduct an event study showing the price reaction of Live Nation stock to new material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. ¶43. Defendants may contest the efficiency of the market, and likely would have raised arguments concerning whether the alleged fraud impacted the stock price. ¶42. Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiffs would need to produce documents, sit for depositions, and take the opposing expert's deposition. ¶43.

Even if Plaintiffs obtained class certification, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) provides that a class certification order may be "altered or amended before final judgment," and thus a class is not safely certified until judgment. *Omnivision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the [class] certification would survive through trial, as

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

Defendants might have sought decertification or modification of the class"). While rare, a change in the law or facts might upset certification. *See Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (decertifying a class of investors after 12 years of litigation). Thus, the complexity and cost of class certification proceedings, along with the risk of failing to obtain and maintain certification, supports approval of the Settlement.

### 2. Plaintiffs Faced Significant Risks to Proving Liability and Other Risks of Continued Litigation

Even if Plaintiffs obtained class certification, there is no question that further litigation would be risky, complex, and expensive. Defendants would continue to argue, as they had from the pleading stage, that Plaintiffs must prove complex violations of antitrust law in order to prove the elements of falsity and scienter. ¶30. In any event, Plaintiffs would need to prove that Defendants not only engaged in the alleged anticompetitive conduct, or that Live Nation lacked real competition in its primary markets, but also that they knowingly or recklessly misled investors in their statements. ¶32. Allegations of anticompetitive conduct, or lack of market competition, are tentpoles of antitrust litigation, which is itself notoriously complex. Proving those allegations would require extensive discovery (beyond what Plaintiffs had already undertaken at the time of settlement, including significant additional third-party discovery) and would entail an expensive and extensive "battle of the experts," where each side would propound expert economic analysis on several different issues, including purported "procompetitive" effects of Live Nation's conduct and market definition. ¶30.

After fact discovery the Parties would engage in expert discovery on the questions of loss causation and damages, as well as antitrust law and economics. On loss causation and damages issues, Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that all or a portion of the alleged stock drops was

attributable to other issues unrelated to the alleged fraud. ¶39. All told, expert discovery and trial preparation would prove expensive and complex, with no guarantee of victory. *See Heritage Bond*, 2005 WL 1594403, at *6; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Accordingly, Plaintiffs faced the risk that they might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove falsity or scienter). Plaintiffs may have an expert excluded, damaging their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might reduce damages significantly. *See* ISS, *Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict* (Feb. 15, 2019) (reporting that according to defendants, plaintiffs won only 5% of the damages they requested), https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/. Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law, reversing plaintiffs' partial jury verdict for failure to prove loss causation). Even if Plaintiffs were to secure a verdict for damages and defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

Accordingly, the likely duration, complexity, and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

*Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

**B.     The Amount Obtained in Settlement Supports Final Approval**

What constitutes a reasonable settlement amount "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question [courts] address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure a judgment at or near the full amount of the class-wide damages they estimate. Indeed, the Ninth Circuit has found that a settlement may be acceptable even if it amounts to "only a fraction of the potential recovery" that might be available at trial. *Officers for Justice*, 688 F.2d at 628; *Mego*, 213 F.3d at 459.

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. ¶39. In arriving at this Settlement, Plaintiffs carefully considered the significant risk that they would be unable to recover a greater amount further down the road.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

Here, the $20,000,000 Settlement recovers roughly 2.7% of Plaintiffs' *maximum* estimated class-wide damages of $743 million under Plaintiffs' *best-case scenario*, as estimated by Plaintiffs' consulting damages expert. ¶49. This best-case scenario assumes that: (i) Plaintiffs prevail at summary judgment *and* trial; (ii) the Court certifies the same class period as the Settlement Class Period; *and* (iii) the Court *and* jury accept Plaintiffs' damages theory, including proof of loss causation for the *full amount* of *each* of the *alleged declines* in stock price. *Id*. The percentage of maximum damages recovered here falls well within the range of other securities class action settlements. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594403, at *8-9 (average recovery between 2% to 3% of maximum damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses"). It is also substantially higher than the median recovery of 1.7% in similarly sized securities cases. *See* Ex. 6 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ("NERA Report"), at 26 (Fig. 23) (between 2015 and 2024, the median recovery for settlements of securities class actions with estimated damages between $600-$999 million was 1.7% of investor losses)).

Furthermore, if the Court or the jury did not find loss causation as to the alleged stock price declines on February 24, 2023, July 28, 2023, and November 21, 2023, the dates as to which Defendants were likely to raise substantial loss causation arguments, Lead Counsel estimates that recoverable damages for the two remaining corrective disclosures (November 18, 2022 and May 23, 2024) would be approximately $320.8 million. ¶52. In this scenario, the $20 million Settlement Amount would represent approximately 6.2% of recoverable damages, *id.*, which is more than double the median recovery in securities cases with similar damages.  Ex. 6 (NERA Report), at 26 (Fig. 23) (between 2015 and 2024, the median recovery for settlements of securities class

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

actions with estimated damages between \$200-\$399 million was 2.9% of investor losses).

Thus, the amount of the Settlement supports a finding that it is a reasonable and adequate result for the Settlement Class.

### C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458. In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016) (extensive discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Live Nation's SEC filings, press releases, conference calls, and other public statements during the putative class period; (ii) reviewing public documents, reports, announcements, and news articles concerning Live Nation, including research reports by securities and financial analysts and the DOJ's complaint; and (iii) retaining an investigator to interview former Live Nation employees and knowledgeable third parties. ¶13. Lead Counsel also fully briefed and prevailed against Defendants' motion to dismiss, ¶¶15-16, and reviewed nearly 200,000 pages of documents produced in discovery by Defendants and key third parties. ¶¶19-21.

Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to recommending to Plaintiffs whether to accept the Settlement Amount to resolve the Action. Reviewing

Defendants' mediation statement and negotiating the Settlement during and after the mediation in conjunction with a former District Court Judge further informed Lead Counsel about the strengths and weaknesses of the case. ¶23. As a result, Plaintiffs and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement. Courts regularly find this factor supports approval of a settlement even when plaintiffs settle before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval). Courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, at the time of Settlement, Plaintiffs and Lead Counsel had acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a reasonable Settlement, supporting final approval. *See id.* ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.")

**D. The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

"The Ninth Circuit, as well as courts in this District, 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement." *Stable Road*, 2024 WL 3643393, at *6 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Here, Plaintiffs reached the Settlement after arm's-length negotiations facilitated by a nationally renowned mediator with extensive experience mediating securities class actions, Judge Phillips.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Judge Phillips has considerable experience mediating complex, securities class actions. ¶22; Ex. 9. With Judge Phillips' guidance, the Parties were eventually able to come to terms after continuing negotiations for weeks following a full-day mediation session. ¶23. "The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion." *Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (that the parties accepted a mediator's proposal from Judge Phillips after participating in a full-day mediation and continuing negotiations over the ensuing weeks confirmed that the settlement was non-collusive).

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation"). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9; *DIRECTV*, 221 F.R.D. at 528.

Co-Lead Counsel's respective experience and reputations allowed them to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Courts in this District, as well as others, have recognized that Rosen Law and GPM are each knowledgeable and experienced firms well-suited to serve as class counsel in securities class actions such as this one. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

(C.D. Cal. 2015) ("The Rosen Law Firm is highly qualified [and] experienced in securities class actions[.]"); *Stable Road*, 2024 WL 3643393, at \*13 ("GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions."). The experience of Plaintiffs' counsel thus supports approval of the Settlement they negotiated. Likewise, counsel for Defendants, Latham & Watkins LLP, vigorously represented their client and were at least equally informed about the merits of the case. ¶85.

Finally, Plaintiffs' support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Exs. 1-2 (Plaintiffs' declarations). Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The extensive arms' length negotiations and the support of both experienced counsel and Plaintiffs favors final approval of the Settlement.

### E.    The Presence of a Governmental Participant Does Not Weigh Against Approval

Courts in the Ninth Circuit also consider the presence of a governmental participant in weighing approval of a proposed class action settlement. Here, although there was an ongoing investigation and action by the DOJ, at the outset of the instant Action the DOJ had not filed its complaint, and at the time the Settlement was reached the DOJ's complaint had not yet survived Live Nation's motion to dismiss. ¶47. The DOJ's still-pending antitrust case does not stand to provide a direct financial benefit to investors in Live Nation stock, as this Settlement does. ¶48. Nor did the DOJ case materially decrease the risks of Plaintiffs prevailing here, as this case was procedurally ahead of the DOJ case and likely would have reached summary judgment stage well before any resolution or findings of fact were made in the DOJ case. *Id.* Indeed, if the DOJ case were dismissed or withdrawn, or if exculpatory evidence came to light in that case, Plaintiffs' case here would have been substantially weakened. *Id.* Notably,

Plaintiffs did not have access to the fruits of the years-long DOJ investigation and had to build their case independently. *Id.* Thus, the existence of the DOJ investigation and then-nascent action "does not support a finding that [Plaintiffs] could have achieved a better outcome than the $[20] million recovery obtained here. Accordingly, this factor weighs minimally, if at all, against denying the Approval Motion, and does not prevent final settlement approval." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *11 (N.D. Cal. Nov. 6, 2023); *see also In re Wells Fargo Collateral Prot. Ins. Litig.*, 2019 WL 6219875, at *3 (C.D. Cal. Nov. 4, 2019) (approving final settlement where government investigated practices at issue in litigation prior to filing of suit was "[p]erhaps the only *Churchill* factor weighing against approving the settlement").

### F.    The Favorable Reaction of the Settlement Class Supports Approval

To date, 207,586 potential Settlement Class Members were directly notified of the Settlement either by mailed Postcard Notice or by emailed link to the Notice and Proof of Claim. Walter Decl. ¶10. The Claims Administrator, A.B. Data, caused 106,270 copies of the Postcard Notice to be mailed to potential Settlement Class Members, and 101,316 potential Settlement Class Members received emails with links to the Notice and Claim Form. *Id*. The deadline to file objections to, or request exclusion from, the Settlement is August 7, 2025. To date, no Settlement Class Members have objected to the Settlement, and only one deficient request for exclusion has been received. *Id*. ¶¶17-18; Joint Decl. ¶¶65-66. Plaintiffs will respond to subsequent objections, if any, in their reply.

The absence of objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). That no valid requests for exclusion (and only one deficient request) have been received also supports the Settlement's approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement).

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence of any objections or valid exclusion requests here supports final approval of the Settlement.

### G. The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1. The Proposed Method for Distributing Relief Is Effective

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiffs and the Claims Administrator duly executed. As the Court directed in the Preliminary Approval Order, A.B. Data mailed copies of the Postcard Notice and emailed links to the Notice and Proof of Claim to over 200,000 potential Settlement Class Members and published the Summary Notice on *PR Newswire* and in *Investor's Business Daily*. Walter Decl. ¶¶2-11. The Postcard Notice and emails notified Settlement Class Members of the Settlement and directed them to the Settlement website (a case-specific website) where the Claims Administrator posted key documents including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶13.

Settlement Class Members are to complete a standard Proof of Claim form that requests the information necessary to calculate claims pursuant to the Plan. The case-specific website also allowed Settlement Class Members to file their claims electronically. Walter Decl. ¶14. "Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the

15

individual investor trading data required for a claims-free process to distribute the Net Settlement Fund." *Stable Road*, 2024 WL 3643393, at *7.

### 2. The Proposed Award of Attorneys' Fees is Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 30% of the Settlement Amount, plus interest, and reimbursement of Litigation Expenses of $142,613.30. This fee request, below the maximum disclosed in the Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, §III(C)(5).

Included in the request for reimbursement of Litigation Expenses are awards to Plaintiffs of $12,500 total pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with Live Nation generally. Plaintiffs spent their own valuable time representing the Settlement Class. Exs. 1-2 (Plaintiffs' declarations). Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. *See* Fee Brief, §V.

### 3. The Parties Have No Other Agreements Besides Opt-Outs

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (¶37) and in Plaintiffs' brief in support of preliminary approval (ECF No. 88-1 at 17), the Parties entered into a Supplemental Agreement that gives Live Nation the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares request exclusion. Only the agreement's exact terms—specifically, the number of shares that trigger the right to terminate—has not been disclosed to Settlement Class Members. This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245,

at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). Live Nation has not, to date, exercised its termination option.

### 4. There is No Preferential Treatment; the Proposed Plan of Allocation Treats Settlement Class Members Equitably

Rule 23 requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how the money is distributed to Authorized Claimants. The Net Settlement Fund is distributed *pro rata* to each Settlement Class Member who submits a valid claim based on their recognized losses resulting from their purchases of Live Nation stock during the Settlement Class Period and the subsequent stock price decline upon revelation of the truth, as alleged in the SAC. ¶¶68-70. Lead Counsel developed the Plan in consultation with Plaintiffs' consulting damages expert, and the Plan closely tracks the theory of the case. ¶¶68-69. The Plan will determine Plaintiffs' recovery just like every other Settlement Class Member, so Plaintiffs receive no preferential treatment. *Stable Road*, 2024 WL 3643393, at *8 (substantially similar plan of allocation treats class members equitably).

## V. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In the Preliminary Approval Order, the Court preliminarily approved the Plan, which was detailed in the Notice. Plaintiffs now request that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused

by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Live Nation stock. Plaintiffs engaged a damages consultant to assist in developing the Plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. ¶¶68-74.

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund based on the claimant's recognized loss as calculated in accordance with the Plan. ¶70. There have been no objections to the Plan from any potential Settlement Class Members. Walter Decl. ¶18; Joint Decl. ¶75. The Plan fairly compensates Settlement Class Members and should be approved. *See Stable Road*, 2024 WL 3643393, at *10-11 (approving substantially similar plan of allocation).

## VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. 207,586 potential Settlement Class Members received direct notice about the Settlement. Walter Decl., ¶10. Of those, there were 106,270 Postcard Notices mailed and 101,316 emails sent with links to the Notice and Proof of Claim. *Id.* The Claims Administrator also published the Court-approved Summary Notice online in *PR Newswire* and in print in *Investor's Business Daily*. *Id.* ¶11. The Claims Administrator also published all required information regarding the Settlement online on the Settlement Website. *Id.* ¶13. The notice plan executed here directed notice in a "reasonable manner to all class

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. *See* Walter Decl., Ex. B (Notice). It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program). Defendants will also provide notice to appropriate governmental officials pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq.*; Stipulation ¶60.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motions and: (a) certify the Settlement Class; (b) approve the Settlement and Plan as fair, reasonable, and adequate; and (c) find that the notice plan complied with all applicable requirements.

Respectfully submitted,

Dated: July 24, 2025

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com
Email: jbaker@rosenlegal.com

**GLANCY  PRONGAY  &  MURRAY LLP**
Robert V. Prongay
Ex Kano S. Sams II
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

20
MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

Email: esams@glancylaw.com
Email: gspencer@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Brian Donley*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:23-cv-6343-KK (ASx)

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,578 words, which complies with the word limit of L.R. 11-6.1.

Date: July 24, 2025

/s/Joshua Baker
Joshua Baker