Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DONLEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., MICHAEL RAPINO, and JOE BERCHTOLD,<br><br>Defendants. | Case No. 2:23-cv-6343-KK (ASx)<br><br>Honorable Kenly Kiya Kato<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br><u>CLASS ACTION</u><br><br>Date:  August 28, 2025<br>Time: 10:00 a.m.<br>Courtroom: 3 |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ......... 3

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE
        REQUEST ........................................................................................................ 4

        A.      Lead Counsel Is Entitled To A Common Fund Fee Award ................. 4

        B.      The Court Should Award A Percentage Of The Common Fund .......... 4

        C.      The Requested Attorneys' Fees Are Reasonable ................................. 5

                1.      The Quality Of The Result Supports The Fee Request .............. 5

                2.      The Substantial Litigation Risks Support The Fee Request ........ 8

                3.      The Skill Required And The Quality Of The Work .................. 11

                4.      The Contingent Nature Of The Representation And The
                        Financial Burden Carried By Counsel Support The Fee
                        Request ...................................................................................... 12

                5.      A 30% Fee Award Is Consistent With Fee Awards In
                        Similar, Complex, Contingent Litigation ................................. 14

                6.      The Reaction Of The Settlement Class Supports The
                        Requested Fee ........................................................................... 15

        D.      A Lodestar Cross-Check Supports The Requested Fee ...................... 16

IV.     LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED ............... 19

V.      PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS ..................... 20

VI.     CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ............................................................................... 2

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ....................................................... 3

*Bickley v. Schneider Nat'l Carriers, Inc.*,
2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ..................................................... 15

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018) ............................................................................ 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .............................................................................................. 4

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ....................................................... 8

*Craft v. Cnty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................. 18

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ..................................................... 15

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................. 7, 12, 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................. 7

*Edmonds v. U.S.*,
658 F. Supp. 1126 (D.S.C. 1987) ....................................................................... 11

*Ellison v. Steven Madden, Ltd.*,
2013 WL 12124432 (C.D. Cal. May 7, 2013) ...................................................... 4

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ............................................................................. 17

*Fleming v. Impax Laboratories Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ..................................................... 18

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) .................................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................................................................13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...........................................................................................9

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ....................................................................................16

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................................................20

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..........................................................................................19

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..............................................................8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).......................................................................................................5

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)............................................................................14

*In re Am. Apparel Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) .......................................................14, 17

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................................6

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. 2012) ..............................................................................17

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991).................................................................2

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2008 WL 63269 (E.D. Pa. Jan. 3, 2008).......................................................................9

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .......................................................15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).........................................................2

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...................................................................................7

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ...............................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................................9

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005).......................................................5

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)..........................................11, 15, 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................16, 17, 19, 21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...............................................................................15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................9, 14

*In re Ocean Power Tech., Inc., Sec. Litig.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...........................................................2

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................................passim

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009)......................................................13

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...........................................................................11, 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ................................................................... 9

*In re QuantumScape Sec. Class Action*,
   2025 WL 353556 (N.D. Cal. Jan. 22, 2025)............................................... 15, 20

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013) ....................................................... 10

*In re Sci. Atlanta, Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010)............................................................. 7

*In re Stable Road Acquisition Corp.*,
   2024 WL 3643393 (C.D. Cal. April 23, 2024)............................................ 16, 21

*In re Tezos Sec. Litig.*,
   2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ............................................... 15

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*,
   2013 WL 12327929 (C.D. Cal. July 24, 2013) ............................................... 14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................... 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................ 13

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................... 12, 14

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................. 10, 13, 21

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)....................................................................................... 13

*Jenson v. First Trust Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008)................................................. 12

*Lea v. TAL Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................................. 17

*Leach v. NBC Universal Media, LLC*,
   2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ............................................... 18

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................9

*Marshall v. Northrop Gruman Corp.*,
   2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ......................................................14

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................9

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ............................................................................15

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010).................................................................................................13

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009).......................................................14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...............................................................................2

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) ..................................................................................5

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................8, 10, 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 12, 2020) .....................................................10

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ..............................................................................2, 10

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ..........................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ..................................................................................4

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ..................................................20

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..................................................................................4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..............................................................................passim

*Zaidi v. Adamas Pharm., Inc.*,
  2024 WL 4342186 (N.D. Cal. Sept. 27, 2024).......................................................21

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)........................................................................10

15 U.S.C. § 78u-4(a)(4) .........................................................................1, 20

15 U.S.C. § 78u-4(a)(6) ............................................................................4

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm, P.A. ("Rosen Law"; and together with GPM, "Lead Counsel"), respectfully submit this memorandum in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.    INTRODUCTION

Lead Counsel have succeeded in obtaining a $20,000,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class. This outcome is extremely favorable in the face of substantial risks, and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully move for an award of attorneys' fees in the amount of 30% of the Settlement Fund (*i.e.*, $6,000,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $142,613.30 in Litigation Expenses. The Litigation Expenses include $130,113.30 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and $12,500 total to Court-appointed Lead Plaintiffs Brian Donley and Gene Gress (together, "Plaintiffs") for reimbursement of their reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment if Plaintiffs did not prevail.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 21, 2025 (the "Stipulation"; ECF No. 89-1), or the concurrently filed Joint Declaration of Joshua Baker and Ex Kano S. Sams II ("Joint Declaration"). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

These are not idle risks. "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).[2] Indeed, a significant number of cases are dismissed in whole or in part at the outset. *See* Ex. 6 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ("NERA Report")) at 17 (Fig. 15) (61% of decisions on motions to dismiss in securities class actions granted the motion with or without prejudice, 20% were partially granted, and 19% were denied).

Nor did the risks end at the pleading stage. Even when a plaintiff succeeds at trial, payment is far from guaranteed.[3] There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite these risks, Lead Counsel has vigorously pursued this case for over two years—working 3,318.56 hours, and advancing $130,113.30 in expenses, all on a fully-contingent basis. As compensation for Lead Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a

---

[2] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[3] *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

fee award in the amount of 30% of the Settlement Fund.  Lead Counsel believe that an award of 30% properly reflects the many significant risks undertaken by Lead Counsel, as well as the result achieved in a hard-fought and difficult litigation.  When examined under the percentage-of-the-fund method for calculating attorneys' fees, with a lodestar crosscheck, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex contingency cases.

Lead Counsel also seek reimbursement of $130,113.30 in out-of-pocket litigation expenses.  The Court should approve reimbursement of these expenses because they are reasonable in amount and were necessary to the successful prosecution of the Action.

Finally, Lead Counsel respectfully request PSLRA awards in the aggregate amount of $12,500 ($7,500 to Donley and $5,000 to Gress) to compensate Plaintiffs for the time and effort they expended on behalf of the Settlement Class.  The work Plaintiffs performed is set forth in their declarations (Exs. 1-2), and but for their "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein and in the Joint Declaration, Lead Counsel respectfully request that the Court award attorneys' fees equal to 30% of the Settlement Fund, approve reimbursement of $130,113.30 in litigation expenses incurred by Lead Counsel, and grant Plaintiffs PSLRA awards in the aggregate amount of $12,500.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Joint Declaration for a discussion of, *inter alia*: the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the

benefit of the Settlement Class; and additional information on the factors that support this fee and expense application, including the lodestar cross-check.

## III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.    Lead Counsel Is Entitled To A Common Fund Fee Award

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

### B.    The Court Should Award A Percentage Of The Common Fund

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). Accordingly, the Court should award attorneys' fees in this case on a percentage-of-the-fund basis.

**C.    The Requested Attorneys' Fees Are Reasonable**

In determining an appropriate attorneys' fee award from a common fund, "[t]he guiding principle is that [the] attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).  Factors that courts consider to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–51.  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated considering the totality of the circumstances.  *Id.*  Each of these factors, along with the lodestar cross-check, support approving the requested fees.

**1.    The Quality Of The Result Supports The Fee Request**

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award."  *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class.").

Here, Lead Counsel achieved a significant and certain cash payment of $20 million, plus interest, for the benefit of the Settlement Class, while avoiding the substantial risk, delay, expense, and uncertainty of continued litigation, trial and the inevitable appeals.  Plaintiffs' consulting damages expert estimates that *if* the Court certified the same class period as the Settlement Class Period, *if* the class had prevailed on its claims at *both* summary judgment *and* after a jury trial, *and if* the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to *each* of the *five* stock price drop dates alleged in this case (*i.e.*, Plaintiffs' best-case scenario), estimated total *maximum* class wide damages would be approximately

$743 million.  ¶49.  Under this scenario, the recovery is approximately 2.7% of class-wide damages.  This is **59% *higher*** than the median recovery for cases of a similar magnitude.  *See* Ex. 6 (NERA Report, at p. 26 (Fig. 23) (between January 2015 and December 2024 the median settlement as a percentage of estimated losses was 1.7% for securities class actions with estimated losses between $600-$999 million)).

This case was not, however, risk free and there were meaningful barriers to recovery.  Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish[ing] damages [is] equally daunting.").  Indeed, Defendants had challenged, and would likely continue to challenge, virtually every element of Plaintiffs' claims—including, but not limited to, the ***five*** loss causation dates.  *See* ECF Nos. 44, 50.  The $743 million maximum damages estimate assumes that Plaintiffs are given full credit for each of the respective stock drops and prevailed against any disaggregation arguments that Defendants may have raised.  ¶51.  Such an outcome was far from guaranteed.

For example, Defendants forcefully argued in their motion to dismiss papers that: (i) "[n]one of Plaintiffs' purported corrective disclosures revealed anything false or misleading about the challenged statements, as the disclosure of an *investigation* into whether anticompetitive conduct occurred is *not* a disclosure that anticompetitive conduct actually occurred" (ECF No. 50 at 3, emphasis in original); (ii) none of the alleged disclosures revealed new information to the market (*id*. at 18); (iii) there is a fundamental mismatch between the challenged statements and the alleged "corrective disclosures" (*id*. at 21); and (iv) the market was fully aware that Live Nation was under regulatory scrutiny and had warned of possible adverse consequences.  *Id*. at 1.  Plaintiffs also anticipate Defendants would argue that even if Plaintiffs could demonstrate loss causation, class wide damages would be substantially reduced

because some of the stock declines were due to confounding information and/or were not statistically significant. *See* ¶¶37-38; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (other forces contributing to an investment's decline "will not bar recovery under the loss causation requirement but will play a role in determining recoverable damages."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market….").

While Plaintiffs overcame Defendants' loss causation arguments at the pleading stage, they ultimately bore the burden of *proving* loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). This would not be an easy task, would rely heavily on hotly contested expert testimony, and if Defendants' arguments were accepted by the Court or a jury, the Settlement Class's maximum potential damages would have been substantially reduced, if not completely eliminated. *See* ¶39; *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379–80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

For example, if the Court or the jury did not find loss causation as to the alleged stock price declines on February 24, 2023, July 28, 2023, and November 21, 2023, the dates as to which Defendants were likely to raise substantial loss causation arguments, then Lead Counsel estimate that recoverable damages for the two remaining corrective disclosures (November 18, 2022 and May 23, 2024) would be approximately $320.8 million. ¶52. In this scenario, the $20 million Settlement Amount would represent approximately 6.2% of recoverable damages, which is more

than double the median recovery in securities cases with similar damages. Ex. 6 (NERA Report), at 26 (Fig. 23) (between 2015 and 2024, the median recovery for settlements of securities class actions with estimated losses between $200-$399 million was 2.9% of investor losses).

Given the range of possible results in this litigation, including no recovery at all, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fees.

### 2. The Substantial Litigation Risks Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048. While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very real.").[4] This Action was no exception.

For a discussion of the litigation risks involved in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and Joint Declaration. *See* Final Approval Memorandum §IV(A); Joint Declaration ¶¶28-46. In addition to those risks, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks

---

[4] *See also* Ex. 6 (NERA Report) at 17 (Fig. 15) (discussing dismissal statistics).

undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage.").

One proxy for assessing risk is "whether Class Counsel had the benefit of a prior judgment or decree in a case brought by the government." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). This is because "[t]he risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action." *See In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) (also finding that higher risk "warrants approval" of class counsel's one-third fee request). In the instant case, no civil or criminal charges had been filed by the SEC or DOJ at the time this case was filed.[5] Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (awarding one-third of settlement fund and noting that "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action."); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (awarding 30% fee and stating that "[t]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill."). The complaint filed by the U.S. Department of Justice's Antitrust Division ("DOJ") on May 23, 2024 postdated the Amended Complaint and the Court's order denying Defendants' motion to dismiss, and, at the time the Settlement was reached in November 2024, the DOJ's complaint had not yet survived Live Nation's motion

---

[5] "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise).").

to dismiss.  ¶47.  Moreover, the DOJ case: (i) did not materially decrease the risks of Plaintiffs prevailing here, as this case was procedurally ahead of the DOJ case and likely would have reached summary judgment stage well before any resolution or findings of fact were made in the DOJ case; (ii) would not have assisted Plaintiffs in overcoming the class certification hurdle in this case; and (iii) could have negatively impacted this litigation if it were dismissed or exculpatory evidence came to light. ¶48.

Another indicium of risk is that there were no other cases filed, and no other lead plaintiff movants.  The PSLRA requires the plaintiff or plaintiffs who file the first class action complaint to publish notice to the putative class. 15 U.S.C. § 78u-4(a)(3)(A).  Here, GPM and Plaintiff Donley filed the first and only pre-appointment complaint in this Action, published notice, and yet Plaintiffs and Lead Counsel were the only movants.  *See* ECF Nos. 26, 27.  This "[l]ack of competition not only implies a higher fee, but also suggests that most members of the securities bar saw this litigation as too risky for their practices."  *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *see also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *12 (N.D. Ind. Sept. 12, 2020) (failure of other plaintiffs' lawyers to filed lawsuits indicated that "this was going to be a difficult case and one in which the chances of success were low.").

The risks inherent in the case were further magnified by the fact that this was not a restatement case.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials). A case predicated on a restatement is less risky because the falsity and materiality elements of a securities fraud claim are effectively conceded.  *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement); *Schwartz*, 2005 WL 3148350, at *29

(securities case was "especially difficult and highly uncertain," particularly because it did not involve a restatement "or any other acknowledgments of wrongdoing.").

In sum, the risks posed by this litigation were substantial and manifold. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.   The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.,* 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by their firm résumés, Lead Counsel's attorneys have many years of experience litigating complex federal civil cases, particularly shareholder and securities class actions. *See* Exs. 4-5. Lead Counsel's experience allowed them to obtain significant investigative materials despite the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, fully prevail against Defendants' motion to dismiss, formulate strategies to effectively prosecute the Action, and obtain a settlement that exceeds the median recovery in securities class actions with similar damages. Without question, Lead Counsel's skill and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."); *see also Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 346 (D.N.J. 2018) (finding, with respect to GPM and Rosen Law, that the firms "have

extensive experience in securities litigation and have demonstrated competency in litigating the present matter.").

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See Jenson v. First Trust Corp.*, 2008 WL 11338161, at *14 (C.D. Cal. June 9, 2008). Defendants in this Action were represented by experienced, aggressive, and highly skilled counsel from Latham & Watkins LLP. ¶85. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz*, 2005 WL 3148350, at *30.

### 4. The Contingent Nature Of The Representation And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the representation. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Destefano*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). Here, Lead Counsel have received no compensation to date, invested 3,318.56 hours of work, equating to a total lodestar of $2,480,116.15, and advanced expenses of $130,113.30. Additional work in responding to any later-filed requests for exclusion or objections, attending the Settlement Hearing, implementing the Settlement, and overseeing claims administration will also be required. Since the inception of this case, Lead Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent efforts, success in complex contingent litigation is never guaranteed. *See* ¶¶44-45.

Lead Counsel are hardly alone in this respect. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996."). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel*, 364 F. Supp. 2d at 994.[6] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).

Here, because Lead Counsel's compensation was entirely contingent, the only certainties were that there would be no compensation or expense reimbursement without a successful result, and that such a result would only be realized after substantial amounts of time, effort, and expense had been expended. Nevertheless,

---

[6] *See also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd* 627 F.3d 376 (9th Cir. 2010).

Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. ¶¶78-83, 93-100. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *NASDAQ*, 187 F.R.D. at 488.

### 5. A 30% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

"[T]he Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013). However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2. As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third.").

"This is particularly true in securities class actions such as this." *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. Jul. 28, 2014); *see also Pac. Enters.*, 47 F.3d at 373 (affirming 33% award from $12 million common fund "because of the complexity of the issues and the risks"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1373 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's

review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement).

The requested fee is, therefore, well within the range of percentages courts in this Circuit and elsewhere have awarded in similarly complex cases. *See Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action settlement); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (approving a fee of 33.3% of the $22.25 million settlement fund in securities class action); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding 33⅓% of $28 million settlement fund); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million).[7]

*A fortiori*, this factor also weighs in favor of granting Lead Counsel's 30% fee request.

**6.    The Reaction Of The Settlement Class Supports The Requested Fee**

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21. While the time to object to the fee and expense application does not expire until August 7, 2025, to date not a single objection to the maximum fee amount (one third of the Settlement Amount) has been filed with the Court. ¶90. "The lack of objection

_____

[7] *See also* Ex. 7 (collecting Ninth Circuit cases).

from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Omnivision*, 559 F. Supp. 2d at 1048 (same).[8]

### D. A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *15 (C.D. Cal. April 23, 2024). In the second step of the analysis, a court adjusts the lodestar to consider, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051–52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

---

[8] Should any objections be received, they will be addressed in the reply papers on August 21, 2025.

When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009).[9] In this case, the lodestar method cross-check strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 3,318.56 hours to the prosecution of the Action. ¶81. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel have submitted declarations that include a schedule detailing the firm's lodestar by individual, position, billing rate, and hours billed.[10] Exs. 4-5. Based on current hourly rates,[11] Lead Counsel's lodestar is $2,480,116.15. ¶81.[12] Thus, the 30% fee request (equal to $6,000,000), yields a multiplier of 2.42. *Id.*

---

[9] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *Am. Apparel*, 2014 WL 10212865, at *23 ("the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[10] *See Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[11] Courts use current rather historic rates to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[12] Lead Counsel's rates range from $1,000 to $1,400 for partners, and $550 to $950 for non-partner attorneys (¶82), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021); *see also* Ex. 8 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

A multiplier of 2.42 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Vizcaino*, 290 F.3d at 1051–52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Destefano*, 2016 WL 537946, at *21 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4."); *Fleming v. Impax Laboratories Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving 30% fee award equal to multiplier of approximately 2.6 in securities class action, and stating that "in similar cases, courts in this Circuit have approved multipliers ranging from 1.0 to 4.0."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high-end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher.").

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, Lead Counsel will respond to any later-filed exclusion requests or objections, attend the Settlement Hearing, oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, effectively diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## IV.     LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.  *Omnivision*, 559 F. Supp. 2d at 1048.  Expenses are compensable in common fund cases like this when the costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶96.

Lead Counsel have incurred out-of-pocket expenses in the amount of $130,113.30 while prosecuting the Action, as set forth in the Joint Declaration. ¶¶93-94.  The bulk of expenses ($91,228.64, or approximately 70.1%) were for the retention of experts ($25,131.00), the mediator ($52,889.64), and a private investigation firm ($13,208.00).  *Id.* Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight

delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").

## V.      PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS

Lead Counsel also respectfully request PSLRA awards to Plaintiffs in the aggregate amount of $12,500 ($7,500 to Donley and $5,000 to Gress) for time spent prosecuting the Action.[13]  15 U.S.C. § 78u-4(a)(4).  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019).   Reimbursement of such costs are allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000); *see also QuantumScape*, 2025 WL 353556, at *6 (awarding lead plaintiff $12,500 and other plaintiffs $5,000 each).

Here, Plaintiffs each took an active role in the litigation by, *inter alia*: (i) moving to serve as Lead Plaintiff in the Action; (ii) producing trading records to their attorneys; (iii) regularly communicating with their attorneys regarding the posture and progress of the case; (iv) reviewing significant pleadings and briefs filed in this Action; (v) reviewing the Court's orders and discussing them with their attorneys; (vi) consulting with their attorneys regarding the settlement negotiations; and (vii) evaluating and approving the proposed Settlement.  *See* Exs. 1-2, ¶5.  "These are precisely the types of activities that support awarding reimbursement of expenses to

---

[13] The total requested reimbursement of Litigation Expenses of $142,613.30 (including PSLRA awards in the aggregate of $12,500 for Lead Plaintiffs) is substantially less than the $185,000 maximum amount of potential expenses set forth in the Notice. ¶95. Donley has requested a greater amount than the $5,000 initially set forth in the Notice because he believes greater compensation is merited than initially estimated. Ex. 1 (Donley Declaration) ¶13.

class representatives." *Stable Road*, 2024 WL 3643393, at *16. The amount requested is consistent with awards in other complex cases. *See Xcel*, 364 F. Supp. 2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").[14]

## VI.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

Respectfully submitted,

Dated: July 24, 2025

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay

---

[14] *See also Immune Response*, 497 F. Supp. 2d at 1173-74 (award of $40,000 to lead plaintiff); *Stable Road*, 2024 WL 3643393, at *16 ($10,000 award to lead plaintiff); *Zaidi v. Adamas Pharm., Inc.*, 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) (same).

Ex Kano S. Sams II
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: gspencer@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Brian Donley*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiffs, certifies that this brief contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 24, 2025                    */s/Joshua Baker*
                                        Joshua Baker