Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DONLEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., MICHAEL RAPINO, and JOE BERCHTOLD,<br><br>Defendants. | Case No. 2:23-cv-06343-KK-AS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER**<br><br>Hearing Date:  January 22, 2026<br>Hearing Time: 9:30 a.m.<br>Location: Courtroom 3<br>Judge: Kenly Kiya Kato |

# **TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................1

II.     CLAIMS ADMINISTRATION ................................................................3

III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS ..................................5

IV.     DISTRIBUTION OF THE NET SETTLEMENT FUND ........................6

V.      RELEASE OF CLAIMS ..........................................................................8

VI.     THE COURT SHOULD APPROVE PAYMENT OF
        ADMINISTRATION-RELATED FEES AND EXPENSES ....................10

VII.    RECORD RETENTION AND DISTRUCTION .......................................10

VIII.   CONCLUSION .......................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Hartman v. Powell*,
2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ........................................................ 6

*In re Agent Orange Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ..................................................................... 6

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ...................................................... 6

*In re Eletrobras Sec. Litig.*,
467 F. Supp. 3d 149 (S.D.N.Y. 2020) .............................................................. 6, 10

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) ............................................................................ 5, 6

*In re Loop Industries, Inc. Sec. Litig.*,
2023 WL 6458976 (S.D.N.Y. Oct. 4, 2023) ........................................................ 8

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) .................................................. 10

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) .................................................................................. 5

*In re Patriot Nat'l, Inc. Sec. Litig.*,
2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ................................................... 10

*In re Qudian Inc. Sec. Litig.*,
2022 WL 633863 (S.D.N.Y. Mar. 4, 2022) ......................................................... 9

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2025 WL 924928 (C.D. Cal. Mar. 24, 2025) ................................................. 5, 6, 8

*In re Toyota Motor Corp. Sec. Litig.*,
2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) ..................................................... 6

*Stein v. Eagle Bancorp, Inc.*,
2022 WL 4245185 (S.D.N.Y. Sept. 15, 2022) ..................................................... 9

*Wilson v. LSB Indus., Inc.*,
2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020) ..................................................... 9

Court-appointed lead plaintiffs Brian Donley and Gene Gress ("Lead Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Walter Declaration.  *See* Walter Decl. ¶39.

## I.    BACKGROUND

On March 21, 2025, the Parties entered into the Stipulation, the terms of which established a $20,000,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons and entities that purchased the publicly traded common stock of Live Nation Entertainment, Inc. between February 23, 2022, and May 22, 2024, both dates inclusive.  Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or director of Live Nation during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Live

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 21, 2025 (the "Stipulation"; ECF No. 89-1), or the concurrently filed Declaration of Adam D. Walter in Support of Lead Plaintiffs' Unopposed Motion for Class Distribution Order ("Walter Decl." or "Walter Declaration"), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("Claims Administrator").

Nation; (iv) any entity in which any excluded person or entity has or had a controlling interest; (v) any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; and (vi) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (v) hereof.  Also excluded from the Settlement Class are any Persons who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.  *See* ECF No. 89-1.[2]

The Court granted preliminary approval of the proposed Settlement by its Order Preliminarily Approving Settlement and Providing for Notice dated April 25, 2025 (ECF No. 92, the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, a total of 209,287 potential Settlement Class Members and nominees were either mailed a Postcard Notice or sent an email containing a link to: (a) the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"); and (b) the Proof of Claim and Release Form ("Claim Form").  *See* Walter Decl. ¶5.  Moreover, the Claims Administrator published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a case-specific website dedicated to the Settlement (www.LiveNationSecuritiesSettlement.com), and set up a toll-free telephone helpline.  *See* Walter Decl. ¶3.  The Notice and the Settlement Website provided Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claims.  The Settlement Website also provided Settlement Class Members with access to downloadable

---

[2] Malta Pension Investments and Fabrizio Clavarra were excluded from the Settlement Class pursuant to their requests.  *See* ECF No. 103 at Exhibit 1.

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.

On August 28, 2025, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 103. That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 102.

Lead Counsel now request that the Court authorize distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Postcard Notice and Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than September 20, 2025. *See* ECF No. 95-3, Exs. A (Postcard Notice) and B (Notice). The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Walter Decl. ¶¶6-17.

Of the 232,264 Claims submitted to and fully processed by the Claims Administrator, 338 were paper submissions, and 908 were online submissions through the online filing portal on the Settlement Website. Walter Decl. ¶9. The remaining 231,018 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id*. ¶¶9, 13. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing large volumes of paper documentation. *Id.* ¶13. This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit A to the Walter Declaration. Walter Decl. ¶¶19-21; Ex. A. The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* ¶20. Of the 1,246 paper and online Claims, the Claims Administrator sent deficiency letters for 896 Claims (or approximately 72%). *Id.* ¶¶19-20. If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim Filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibits B and C to the Walter Declaration respectively. *Id.* ¶¶22-25; Exs. B & C. Of the 231,018 Electronic Claims, 175,256 (or approximately 76%) were incomplete or deficient and were filed by a total of 282 E-Claim filers. *Id.* ¶22. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Walter Declaration, after the deficiency process was complete, the Claims Administrator determined that 49,830 Claims are acceptable and should receive a distribution. Walter Decl. ¶¶34-35; 37; Exs. D, E. This number includes 49,762 timely and valid claims, and 68 Late But Otherwise Eligible Claims (addressed in Section III below). *Id*. The Claims Administrator also determined that 182,434 Claims are not eligible and should be rejected for the

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

following reasons: (i) 125,073 Claims did not result in a Recognized Claim under the Court-approved Plan of Allocation; (ii) 20,904 Claims had no eligible transactions in Live Nation common stock; (iii) 100 Claims were duplicates; (iv) 35,457 Claims were replaced; (v) 897 Claims were withdrawn; (vi) two (2) Claims were identified as questionable; and (vii) one (1) Claim was rejected for not providing the required backup documentation to support their transactions during the Settlement Class Period. *Id.* ¶¶36-37; Ex. F.

## III. LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the September 20, 2025, claim filing deadline. Walter Decl. ¶¶29, 35. "There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *3 (C.D. Cal. Mar. 24, 2025) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'")); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator used a cut-off date of December 15, 2025—approximately three (3) months after the Court-imposed September 20, 2025, deadline. Walter Decl. ¶¶29, 35, 39(e).

Of the 232,264 Claims submitted, 10,427 Claims were received or postmarked after the initial September 20, 2025 deadline, but before the Claims Administrator's practical cut-off of December 15, 2025. Walter Decl. ¶29. Of these 10,427 Claims, 68 are late but otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.* ¶¶29, 35, 37(b); Ex. E. These 68 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe

that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *Stable Road*, 2025 WL 924928, at *3 (accepting "Late but Otherwise Eligible Claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same); *see also In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261–63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Walter Decl. ¶¶29, 35, 37(b); Ex. E.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after December 15, 2025, be included in the distribution, except as provided in paragraphs 39(d) and (e) of the Walter Declaration. *See also*, *infra*, Sec. IV. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *Gypsum*, 565 F.2d at 1127).

## IV. DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments

calculate to $10.00 or more (the "Initial Distribution"). *See* Walter Decl. ¶¶39(a)(i)-(vi). Based on the substantial experience of Lead Counsel in similar distributions, it is anticipated that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id*. ¶39(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. Walter Decl. ¶39(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants who participated in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer cost-effective. *Id*. ¶39(c).

Thereafter, if sufficient funds remain to warrant the processing of Claims received after December 15, 2025, those claims will be processed, as well as any

earlier-received Claims for which an adjustment was received after December 15, 2025, that resulted in an increased Recognized Claim, and will be paid in accordance with subparagraph 39(e) of the Walter Declaration. *Id*. ¶39(d)-(e). More specifically, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks. *Id*. ¶39(e).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to "the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy." *Stable Road*, 2025 WL 924928, at *4; *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 6458976, at *2 (S.D.N.Y. Oct. 4, 2023) (same); *see also* Walter Decl., ¶39(d); Declaration of Lauren Barnes of the Public Justice Foundation ¶¶11-13 (listing securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## V.     RELEASE OF CLAIMS

To permit the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in reviewing, verifying, calculating, tabulating, or otherwise processing the submitted Claims, or in administering or handling the taxation of the Settlement Fund or Net Settlement Fund, shall be released and discharged from any and all claims arising

from such involvement.  Accordingly, Lead Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds.  *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 4245185, at *2 (S.D.N.Y. Sept. 15,

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

2022) (same); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033, at *2 (S.D.N.Y. Dec. 23, 2010) (same).

## VI. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration for this project up to the Initial Distribution is $243,783.63. Walter Decl. ¶38. To date, the Claims Administrator has received payment of $243,783.63. *Id.* The estimate to conduct the Initial Distribution is $26,560. *Id.*; Ex. G. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $270,343.63, consisting of $243,783.63 for fees and expenses already accrued, and $26,560 in anticipation of the work to be performed during the Initial Distribution.[3] *Id.*

## VII. RECORD RETENTION AND DISTRUCTION

Plaintiffs respectfully request the Court order that: (i) no earlier than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) no earlier than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.* ¶39(f).

## VIII. CONCLUSION

For all of the above reasons, Lead Plaintiffs respectfully request that the Court grant the Motion.

---

[3] If the amount of anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

Respectfully submitted,

Dated: December 24, 2025

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Ex Kano S. Sams II
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: gspencer@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

Telephone: (310) 914-5007

*Additional Counsel for Brian Donley*

MEMORANDUM IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiffs Brian Donley and Gene Gress, certifies that this brief contains 3,246 words, which complies with the word limit of L.R. 11-6.1.


DATED: December 24, 2025          */s/Joshua Baker*
                                  Joshua Baker

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL